UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| FRANK MARTIN SONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV-07-180-B-W |
| | ) | |
| JOHN DEERE CONSTRUCTION & FORESTRY COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AFFIRMING THE**
**RECOMMENDED DECISION OF THE MAGISTRATE JUDGE**

On December 14, 2007, the United States Magistrate Judge filed her Recommended Decision regarding the Plaintiff's Motion for a Temporary Restraining Order (TRO). Both the Plaintiff and the Defendant filed objections to the Recommended Decision on December 31, 2007. The Defendant filed a response to the Plaintiff's objections on January 16, 2008, and the Plaintiff filed a response to the Defendant's objections on January 18, 2008. The Court has reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record; it has made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision, and concurs with the recommendations of the United States Magistrate Judge for the reasons set forth in her Recommended Decision, and determines that no further proceeding is necessary.

**I.     DISCUSSION**

    **A.     Plaintiff's Objections**

        **1.     Use of the Four-Part Test for Injunctive Relief**

Frank Martin Sons (FMS) objects to the Magistrate Judge's position that the "traditional,

four-element test for the availability of injunctive relief applies to the instant motion . . . ."[1] *Pl.'s Objections to Magistrate Judge's Proposed Findings and Recommended Decision* at 3 (Docket # 34) (*Pl.'s Obj.*)  FMS claims that in doing so, the Magistrate Judge "ignores the fact that the Maine Franchise Act does not require a finding of irreparable harm, but, instead, a showing that the purpose of such remedial legislation would be violated in the absence of injunctive relief." *Id.*  It proposes that the statute creates a unique breed of injunctive action, a "*statutory*, as opposed to *equitable*, injunctive relief."[2] *Id.* at 1, 3.  The Court disagrees.

The Maine Franchise Act states that a "dealer, distributor or franchisee who has been damaged by violation of this chapter may bring an action to enjoin the violation . . . ."  10 M.R.S.A. § 1362.  This snippet of statutory language merely authorizes the dealer to bring injunctive action, it does not create a new set of standards to evaluate a motion for a TRO.  The

---

[1] Four elements govern the determination of a motion for preliminary injunctive relief:
  1. The probability of the movant's success on the merits,
  2. the prospect of irreparable harm absent the injunction,
  3. the balance of the relevant equities, and
  4. the effect of the court's actions on the public interest.

*Matos v. Clinton Sch. Dist.*, 367 F.3d 68, 73 (1st Cir. 2004). The same four-factor test applies to the issuance of a TRO.  *Northwest Bypass Group v. U.S. Army Corps of Engineers*, 453 F. Supp. 2d 333, 337 (D.N.H. 2006); *Largess v. Supreme Judicial Court*, 317 F. Supp. 2d 77, 81 (D. Mass 2004) (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop*, 839 F. Supp. 68, 70 (D. Me. 1993)).

[2] FMS's position in its objection differs from its initial position.  In its motion for a TRO, it contended that the Court "was obligated to exercise its discretion in favor of granting injunctive relief *when the prerequisites of a claim were shown*."  *Pl.'s Mot. for Temporary Restraining Order* at 11 (Docket # 2) (*Pl.'s Mot.*).  For support, FMS cited a string of cases.  *Id.* at 10.  The cases contain language that encourages injunctive relief when the four-factor test has been satisfied.  But, none supports FMS's current position that the Court should grant injunctive relief on a statutory rather than equitable basis, ignoring the four-factor test.  FMS has highlighted two cases as authority for its position: *Wadena Implement Co. v. Deere & Co.*, 480 N.W.2d 383, 389 (Minn. Ct. App. 1992) and *Agee Agric. Equip. Sales v. Trail King Indus.*, 800 F.2d 789, 792 (8th 1986).  *Wadena*, however, stated that it "is error . . . for the trial court to grant injunctive relief without evaluating specific factors," referring specifically to the traditional four-factor test.  *Wadena*, 480 N.W.2d at 388-89 n.4.  *Agee* discussed whether the "plaintiffs demonstrate irreparable harm and meet the tests set out in *Dataphase*."  *Agee*, 800 F.2d at 791.  *Dataphase* set out the traditional four-factor test.  *Dataphase Sytems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 112 (8th Cir. 1981).  FMS's point in its initial motion was that if the four-factors were established, the Court was obligated to "exercise its discretion in favor of granting injunctive relief."  *Pl.'s Mot.* at 11.  FMS now claims that the Magistrate Judge erred in applying the four-factor test at all.  This position is not only contrary to its original position, but stands without support.

Magistrate Judge correctly applied the traditional, four-part test to determine the appropriateness of injunctive relief in this case.

### 2. Likelihood of Success Under Section 1365

The Plaintiff next argues that the Recommended Decision "fails altogether to address Frank Martin Sons' likelihood of success as to its claim under § 1365 of the Maine Franchise Act." *Pl.'s Obj.* at 17. That section of the statute states: "Notwithstanding any other provision of law, it is unlawful for the manufacturer or franchisor, without due cause, to terminate a franchise or to fail to renew a franchise on terms then equally available to all its distributors or dealers." 10 M.R.S.A. § 1365.

> FMS outlines its position:
>
> [M]anufacturers are prohibited from acting to terminate one dealer when similarly-situated dealers have not been terminated by such manufacturer in the past . . . . Deere has not ordinarily acted to terminate its dealers based on the first asserted event of a discrepancy related to warranty service . . . . Termination of Frank Martin Sons would also violate § 1365 . . . to the extent that Deere has previously excused a similarly-situated dealer under such circumstances.

*Pl.'s Mot.* at 13-14.[3]

John Deere Construction & Forestry Company (Deere) argues that section 1365 does not "require that terminations be achieved 'on terms then equally available to all its distributors or dealers,' but rather that terminations be based on 'due cause' (e.g. fraud). The clause of section

---

[3] FMS also claims that "the Recommended Decision disregards . . . that [Deere]'s Service Administration Manual suggests that: (a) audit and reimbursement (as opposed to termination) are the remedies that [Deere] would typically pursue in the event of a warranty claim dispute . . . ." *Pl.'s Obj.* at 6. The Service Administration Manual states, under the heading "Misleading Claim Information":
> If a dealer or an employee of the dealer, authorized to file warranty claims, has given false or misleading claim information the Company may at its option, *and in addition to any rights available to the Company*: Audit any claims previously submitted by the dealer [and] [n]ot pay the claim or charge it back with interest if it is already processed.

*Buchignani Aff., Ex.* 7 part B at 14 (emphasis added). Contrary to FMS's assertions, Deere's decision to terminate the dealership, rather than pursue audit and reimbursement remedies, violates neither the Service Administration Manual nor 10 M.R.S.A. § 1365.

1365 relied on by FMS ('on terms then equally available') clearly modifies the offer of a franchise renewal only." *Def.'s Resp. to Objections by Pl. to Magistrate Judge's Proposed Findings and Recommended Decision* at 5 n.5 (Docket # 41) (*Def.'s Resp.*).

The Court agrees that the phrase "without due cause" modifies termination under section 1365. First, a plain reading of the statute compels the conclusion that if the manufacturer has due cause, it may terminate the franchise without demonstrating that it terminated other franchises "on terms then equally available." *See Rolec, Inc. v. Finlay Hydrascreen USA*, 917 F. Supp. 67, 68 (D. Me. 1996) ("As enacted, the law prohibits termination of a franchise agreement or refusal to renew an agreement unless there is good cause."). Second, FMS's reading of section 1365 contradicts other provisions of the same law. *See* 10 M.R.S.A. § 1363(3)(C). Third, if interpreted as FMS suggests, the statute would make little sense. The phrase "on terms then equally available to all its distributors and dealers" must refer to renewals only, since if the franchise is terminated, there will be no ongoing terms. Fourth, if FMS is correct, the statute would produce a result precisely contrary to FMS's own argument. The statute would read: "[I]t is unlawful for the manufacturer or franchisor, without due cause, to terminate a franchise . . . on terms then equally available to all its distributors or dealers." The statutory language would make it unlawful for the manufacturer to terminate the franchise on terms equally available to all other dealers. FMS argues that it is unlawful to terminate a franchise on terms *not* equally available to all dealers. Fifth, the language of the statute would be syntactically awkward: one does not usually terminate "on terms," but rather "for reasons equally applicable to all its distributors." Finally, FMS's interpretation simply excises the phrase "without due cause" from the statute.

### 3.     The "Plain Language" of Section 1363

FMS asserts that the Magistrate Judge failed to construe the language of the Act in a manner consistent with its plain meaning. Specifically, FMS contends that section 1363 "specifically requires that where a manufacture's action to terminate is based on a service-related deficiency, the dealer must be given advance notice of such service-related deficiency and an opportunity to cure same." *Pl.'s Obj.* at 15. The issue is whether the alleged falsification of warranty claims by FMS "relates to . . . performance . . . in sales or service." 10 M.R.S.A. § 1363(3)(C)(2). The Court agrees with the Magistrate Judge that "falsification of warranty claims and non-compliance with record keeping obligations are not really matters of sales or service performance." *Recommended Decision on Pl.'s Mot. for Temporary Restraining Order* at 15 (Docket # 28) (*Rec. Dec.*).

After all, FMS contracted with Deere to perform two essential functions: to sell and service Deere equipment. *Compl. Ex.* 1 (Docket # 1). To adopt FMS's expansive interpretation would cast a shadow over every interaction between a franchisor and franchisee, since every dealer act would somehow relate to sales and service performance. In concluding that the falsification of warranty claims is not a matter of sales or service performance, the Magistrate Judge reasonably interpreted section 1363 within the overall context of the Act.

### 4.     Objection to Evidentiary Submissions

The Recommended Decision outlines an example of FMS submitting serial numbers from a machine under warranty to cover the repair of an older, out-of-warranty machine. Specifically, the Recommended Decision describes the repair of skidder 172 and the submission of warranty information for skidder 876. *Rec. Dec.* at 6-8. FMS highlights the Magistrate Judge's statement that "the record reflects that skidder 876 would have had a shiny new green

frame, whereas skidder 172 would have had a deteriorated yellow frame, making an inadvertent mix-up even more unlikely." *Pl.'s Obj.* at 5 (quoting *Rec. Dec.* at 7-8).  This finding turns out to have been in error.  The parties agree that, in describing the color of the skidders, the Recommended Decision erroneously combined two separate allegations of serial number swapping into one incident.[4]  *Pl.'s Obj.* at 5-6; *Def.'s Resp.* at 8-9.  FMS attempts to make the most of this mistake, declaring that the "highly-charged conclusion in the Recommended Decision that [FMS] engaged in an "unvarnished attempt . . . to line its own pockets at the expense of [Deere]" is premised on a factual finding *contradicted* by the record evidence." *Pl.'s Obj.* at 5-6 (quoting *Rec. Dec.* at 19).

The Court views the Magistrate Judge's factual error on the color of the skidders as inconsequential.  When the two incidents are separated out, the Magistrate Judge's overall points remain salient.  Even though it is true that there was no color difference between skidders 876 and 172, the fact remains that FMS confused Skidder 876, which had been purchased as new and had only about 2,000 hours of operation on its meter, with Skidder 172, which had in excess of 13,000 hours of operation on its meter and was beyond warranty.

But, more significantly, as the Magistrate Judge observed, FMS's mistake was to its considerable financial advantage.  It received Skidder 172 at a discounted price on trade due to the cracked frame, replaced the frame at Deere's expense, and sold it at a higher value to another customer.  Color aside, this Court, like the Magistrate Judge, finds it inexplicable that FMS, with its staff of expert technicians, did not realize the difference between Skidders 172 and 876.  If FMS's self-proclaimed "mix-up" did not inure to its substantial financial advantage, its

---

[4] The Recommended Decision seems to have grafted a later episode, where the color of the skidders made a difference, into its recitation of the facts regarding skidders 172 and 876.  *See Williams Aff.* at ¶ 24 (Docket # 19).

protestations of innocent mistake would be more convincing. In short, FMS's charge that the colors of skidders 172 and 876 are the "central basis for the recommended denial of temporary injunctive relief" is incorrect.

Moreover, the Magistrate Judge described a number of other instances where FMS failed to comply with Deere guidelines, including an absence of documentation for claimed warranty reimbursements, false statements, and inflated labor rates. *Rec. Dec.* at 8-9. Therefore, the Plaintiff's objection to the color scheme example does not convince the Court that the Magistrate Judge was incorrect in finding that "the evidence adduced by [Deere] clearly does implicate reasonable and materially significant provisions of the franchise agreements," and therefore, "on the basis of the paper record . . . FMS has failed to demonstrate a likelihood of success on the merits of its claims." *Rec. Dec.* at 16-17.

### 5. Question of Irreparable Harm

The Plaintiff finally argues:

> [The loss of] customer goodwill generated . . . over six decades of work on behalf of its customers represents exactly the type of harm that is not reasonably susceptible of exact calculation. Accordingly, Frank Martin Sons will be left without an adequate remedy in the absence of relief by the District Court.

*Pl.'s Obj*. at 20. The Magistrate Judge notes that evidence was produced showing "[Deere's] product lines account for about 40 percent of FMS's sales and service volume and that competing products from other manufacturers are already carried by FMS and could fill the void left by [Deere's] termination of the franchise." *Rec. Dec.* at 17. The Magistrate Judge continues: "Notably, the Ouellette affidavit offered in reply is silent on this matter, which leaves the record unbalanced and tipping in favor of [Deere], another reason to deny the motion." *Id.* FMS has remained silent on the evidence produced by Deere which quantifies the amount of business

FMS would lose, and the possibility that this lost business could be replaced by the manufacturers already carried by FMS.[5] Based on the record, any potential loss that FMS would sustain as a result of the termination of the franchise relationship is quantifiable, and does not qualify as irreparable harm.[6]

### B.  Submission of New Evidence

The Plaintiff seeks to submit additional support for its claim for temporary injunctive relief in the form of a declaration by Gerry James.  While the Court has the discretion to open the record, in this case, it will not do so.  "Parties must take before the magistrate, not only their best shot but all of their shots."  *Borden v. Secretary of Health & Human Services*, 836 F.2d 4, 6 (1st Cir. 1987).

---

[5] FMS cites *Everett J. Prescott, Inc. v. Ross* to support its argument that when a business loses good will, customer contacts, and referral sources, any subsequent losses cannot be reduced to money damages.  383 F. Supp. 2d 180, 191 (D. Me. 2005).  In *Prescott*, a former employer moved for injunctive relief against a salesman who had left its employ and who had used its confidential sales information to garner sales at his new job.  In *Prescott*, there was "no need to speculate" whether the salesman was going to take advantage of his former employer's good will, it "had already happened."  *Id.* at 192.
In contrast, here the claims of future harm are purely speculative.  When dealing with loss of good will based on speculation, this Court has found:
> Loss of good will is frequently valued and recompensed in litigation. There is shown to be no pattern of insufficiency in such damage awards or any systemic obstacles to their fruition. Likewise, claims for future economic loss of every manner and description are the very staple of civil litigation. Assiduous counsel, making vigorous use of the investigative and ample discovery tools made available in the litigation process, will surely be able to ferret out the details of any future loss sustained . . . .

*Merrill Lynch,* 839 F. Supp. at 75.  As noted in *Prescott*, "speculative injury 'does not constitute a showing of irreparable harm.'"  *Prescott Inc.*, 383 F. Supp. 2d at 191 (quoting *Merrill Lynch*, 839 F. Supp. at 74-5).

[6] Deere objects to the Magistrate Judge's conclusion that "there will be people in the northern Maine market whose business operations will be frustrated to some extent by FMS's inability to obtain John Deere parts or to perform warranty service on [Deere] equipment."  *Rec. Dec.* at 18, *see Def.'s Objections Under 28 U.S.C. § 636(b)(1)* (Docket # 36).  As noted by the Magistrate Judge, "success on this solitary element [the public interest] is not sufficient to justify the imposition of preliminary injunctive relief."  *Rec. Dec.* at 18.  In rejecting FMS's objections to the Recommended Decision, the Court renders this issue moot, and therefore does not reach the merits of Deere's objection.

**II.    CONCLUSION**

1. It is therefore <u>ORDERED</u> that the Recommended Decision of the Magistrate Judge is hereby <u>AFFIRMED</u>.

2. It is further <u>ORDERED</u> that the Plaintiff's Motion for Temporary Restraining Order (Docket # 2) is <u>DENIED</u>.

SO ORDERED.

<pre>                                        /s/ John A. Woodcock
                                        JOHN A. WOODCOCK, JR.
                                        UNITED STATES DISTRICT JUDGE</pre>

Dated this 21st day of March, 2008